Martin, J.
delivered the opinion of the court. The plaintiffs instituted this suit by a process of attachment, which was levied on eighteen bales of cotton, afterwards claimed by Cumming & Ramsay. The former had judgment against the defendant and claimants. The latter appealed.
The fact of the case appear by a bill of lading and depositions, which come up with the record.
According to the bill, twenty-three bales of cotton were shipped by Cumming & Ramsay, and consigned to themselves.
Graves deposed, that in March last, he was employed by the defendants, to take on board of his, the witness’s, boat, twenty-three bales of cotton, to be shipped to the mouth of Pearl *313 river, Graves’ landing; and for the freight, he received a draft on the claimants.
Lot deposed, he was present when a quantity of cotton was taken out of Graves boat, which he commanded; that the cotton had been put on board by the defendant, at his landing, on Pearl river, to be carried to Graves’, at the mouth of that stream. The cotton was immediately put on board of the schooner Pearl, consigned to the claimants in New-Orleans.
Peake deposed, that the cotton arrived in New-Orleans on a Saturday, and was not attached, to the best of his recollection, till the following Monday.
Rankin deposed, that the cotton was put under his care by the defendant (when he came down Pearl river, as a passenger on board of Graves’ boat) to be shipped to the claimants. When at the mouth of the Pearl river, the deponent directed the cotton to be put on board of the schooner Pearl, and took a bill of lading in the claimants’ names, which bill he delivered to them at New-Orleans, on a Saturday, immediately after the arrival of the schooner in the basin. Ramsay ordered the hands, who had began to unload, to stop, *314 as he could not get drays till Monday. In the mean while, viz. on Saturday, eighteen bales of it, a part of which was on shore, and the rest on board, were attached, in the present suit. The defendant told the deponent, he was indebted to the claimants, and did not know whether the cotton would suffice to pay them, and it was with a view to discharge their claim, that the cotton was shipped.
Lee deposes, that some time in January or February last, he heard the defendant promise to the claimants, to send them the balance of his crop of cotton, being from twenty to thirty bales. He was present when the defendant and claimants settled their accounts, and the former was considerably in arrears; and he has lately understood from him, that he had shipped his cotton to the claimants in payment of his debt, as far as it would go.
Martin deposed, that he is master of the schooner Pearl, and received the cotton, at the mouth of Pearl river, from Rankin, as the property of the claimants, and signed bills of lading accordingly. It was marked with the defendant’s mark, and was taken *315 from on board of Graves’ keel-beat, without it being asked whose cotton it was.
Mathews deposed, that he had been the clerk of the claimants for two years past. The bill of lading annexed to the claim, is the one delivered them by Rankin. They had made to the defendant, an advance of $500, in consideration of his shipping his cotton to them. Some time before they had paid a draft of his for $2460, without their having any funds in their hands, and he heard him promise, that, in consideration of this, he would send them his crop of cotton. On the Saturday before the cotton was attached, in the present suit, the deponent went on board of the schooner Pearl, exhibited the bill of lading, and demanded the cotton. When the captain said he could not conveniently deliver it immediately, as it was in the bottom of the hold, but would land it as soon as possible. The deponent returned a short time after, but received the same answer. He is generally acquainted with the mercantile houses in New-Orleans, and believes there is no such firm there as Cumming and Ramsay & Co., and has no doubt the cotton was intended for the claimants.
*316 Gordon deposed, in the same manner as to the last circumstance in the deposition of the preceding witness.
There cannot be any doubt from the testimony, that Cumming & Ramsay, the claimants, are the persons whom Rankin meant to describe, by the firm of Cumming and Ramsay & Co.
The bill of lading shews, that the cotton was shipped by them. The oral evidence, if it can be of any weight against the written, does not lessen it. Rankin, who was charged by the defendant, the original owner of the cotton, with the care of it, and directed to deliver it to the claimants, shipped it in their name, and they had, before the attachment, ratified his act, by accepting the bill of lading, and demanding the cotton. Their right, therefore, to, or on it, must be the same as if they had shipped it themselves.
It is true, this does not make the cotton their own; for nothing shews that they were any thing more than the factors of the defendant, for the sale of the cotton, although it is in evidence, that the proceeds were intended to discharge a claim of theirs on the defendant. As such, they had a lien on it for their *317 advances, and the balance of their general account: a lien, which, in our opinion, the attachment could not affect.
It is true, the claimants demand the cotton, not as the factors or agents of the defendant, but in their own right, and as absolute owners of it. Although, the evidence does not establish their right as such, we are of opinion, that, as they have substantially proven their right to hold the property, as factors, and to be paid thereout, judgment may be given in their favour, according to the provision in the Novissima Recopilacion, 11, 16, 2.
It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed, and that the cause be remanded, with directions to the judge to ascertain and allow the amount due to the claimants, and it is ordered, that the plaintiff and appellee pay the costs of this appeal.